of America. May it please the Court, my name is A. Jerry Busbee, and that is the correct pronunciation, Siddiqui. I represent the taxpayer appellants in this matter. There are two issues before the Court that arise out of Judge Silver's ruling on two motions for summary judgment in the district court. The first motion for summary judgment was brought by my clients, and it concerns a very clear-cut issue, and that is, how do you calculate the statutory damages under 7431 in terms of how many people the disclosures were made to? How many disclosures were made? It's a question of interpretation of that statute. The second one was a motion for summary judgment brought by the government, and the question was the punitive damages that are available under 7431 as to whether or not there must first be actual damages before you can have punitive damages. In both, as I stated earlier, both motions, Judge Silver ruled in favor of the government. I'd like to discuss first the statutory damage issue. I think it comes down primarily to one salient point, and that is, if we look at the statute itself, it provides $1,000 statutory damages for each act of disclosure. Now, the government contends that the plain language of the word each act or the words each act is self-evident. Why wouldn't the statute be written, disclosures in the plural, if, as you contend, there were multiple ears hearing the statute, the wrongful disclosure statute, which is the statute, disclosure, singular. So the speaker discloses that is an act that is in the singular. Everybody in the courthouse can hear me, but I'm only saying it once. I'm making a disclosure. But the definition of disclosure is the act of unauthorized. Well, it's unauthorized, but it's the making known. An unauthorized or disclosure, by definition, in section 6103, is making known to any person in any manner whatsoever return or return information. So the 6103 is, again, authorizing unauthorized disclosure. Again, the singular is used in 6103. But the disclosure can be made to more than one person, Your Honor, is our contention. The focus must be on the making known to any person. Just as the Fourth Circuit in Malice determined that a single revenue agent's report sent to joint taxpayers constituted two acts of disclosure. And it is our contention here that the same thing holds true in this case. Now, do you then disagree with the holding that's a disclosure made over, say, the radio to a potential audience of a million people? I guess your contention is, well, that's a thousand times a million? No, Your Honor. Because? In that situation, the Ninth Circuit has already addressed that issue. Yeah, I know. And there we're referring to the subsequent disseminations or a second tier of disseminations. That's what the Ninth Circuit ruled on in Miller. Why is that a second tier if this one's, I mean, this one's, I'm in a room and I speak to a hundred people. The other one's a radio and I speak via the radio to a million people. How is that analytically different for purposes of this case? I don't know, Your Honor. I can't. It depends on the setting. Certainly in the Miller case, it was a disclosure made directly to a reporter who then wrote a story for the L.A. Times. In the case of a radio, I would assume that if the person making the disclosure is addressing the host, the disclosure is to him. But the rest of it. How about if I am the host? Just to choose a name, Rush Limbaugh. And I say, so and so has tax problems. Now, is that one act or is that a million acts? Because he has a million listeners. I think under the rationale of Miller, that's one act. Because the disclosure was made to Rush Limbaugh. No, no. I'm Rush Limbaugh and I'm making the disclosure and I'm saying, ditto heads, this person has a tax problem. Now, is that one act or is that a million acts? Well, first of all, Rush Limbaugh would not be covered by this statute here. I see. Okay. I'm a revenue person and I go on the radio and I say, ladies and gentlemen, all the listening public, I want you to know that person X has cheated on his taxes. I think that that would be subject to the subject to the proof of how many people were listening. But if I got a million people listening, that's a million times a thousand. Well, this was the issue in Ward, the Colorado District Court case. And one of the things the court ruled there was that there was pure speculation as to how many people were listening. And refused to address that problem. I think the same thing would hold true here. But the rationale, if you could determine how many people were listening, I think the statute is clear enough. I don't want to detain you too long because your time is running. I'd like to allow you some time to address the punitive damages point, because that, I think, is also an important issue. Let me go to the punitive damages then, Your Honor. The statute provides that, A, that for the statutory damages, and there's no punitive involved there. The Ninth Circuit in Miller seemed to indicate there was a built-in punitive aspect to the statutory damages when it said that the 7431 was meant to punish unauthorized disclosure. In the context of Part B, though, Part B begins with the phrase, the sum of. Now, and then it says the sum of actual damages and two punitive damages. Now, the Congress, the Congressional history on this statute discusses the fact that the reason for the statutory damages was there was, where you have an invasion of privacy by the disclosure of tax return information. As I understand the Congressional history, the legislative history, there is actual damages, but the Congress says they're almost impossible to prove. They're there. Now, in this case, this statute says the sum of the actual damages, which could be zero, as they are in this case, and two punitive damages. Now, the government has, in their answer, has said that there was an unauthorized disclosure. It was grossly negligent. Punitive damages are available depending on the interpretation of the statute. This Court refused to address that in Miller because it found that there were no elements calling or facts that provided for punitive damages. I think it's clear that if you say there are no punitive damages, then that language that the Congress used, the sum of, is superfluous. It just could have said actual damages plus the punitive. Thank you, Your Honor. And I think my questions held you up unnecessarily. We'll give you a minute or so in rebuttal. Thank you. Good morning, Your Honor. May it please the Court. Rod Rosenstein on behalf of the United States. Your Honor, I'd like to make two points this morning that we believe are undisputed in this case and we believe control the outcome. The first is an undisputed point of fact, and that is that the plaintiff suffered no actual damages. That was stipulated in the district court. It's in the excerpts of record at tab 3, page 2, and it's acknowledged once again in the appellant's brief on appeal. If this were a tort suit at common law, that would end the matter. There are no actual damages. The second issue, Your Honors, is an undisputed and fundamental principle of law, and that is that the United States is liable only if and only to the extent that it has clearly and unambiguously, unequivocally waived its sovereign immunity. Under that well-established principle that the Supreme Court has reiterated many times, perhaps best expressed in United States v. Nordic Village, 503, U.S. Reporter at 34, and Lane v. Pena, 518, U.S. Reporter at 192, the government's liability cannot be extended beyond what the language requires. And so, Your Honors, the appellants have failed to address this point in their opening brief. They failed to address it in their reply brief. Well, I'm – it's obvious they've waived their sovereign immunity. We know that. The only question is, what's the measure of damages? Well, Your Honor, the – with respect, we believe the principle of Nordic Village and Lane v. Pena is that there are two issues. The first issue is whether they've waived their immunity to be sued, but the second issue is to what extent they have waived it in the way of damages. But under your argument, that means once the United States has waived their sovereign immunity, for example, in the Federal Tort Claims Act, I've got to read every doggone sentence in that entire statute with sort of an eagle eye as in favor of the United States, because there's not just one question of waiver. Everything that says something against the United States is a further waiver. Isn't that what you're telling me I've got to do? I think the Federal Tort Claims Act is a more complex regulatory scheme, Your Honor. This is a relatively simple scheme. No, but isn't the principle the same? The principle is the same, although there's some aspects of the Federal Tort Claims Act, for example, some courts have ruled that some of the exceptions to liability should be liberally construed, although that issue, I believe, is now before the Supreme Court in a case called Doe v. Chau, so that remains to be resolved. But the fundamental background principle, Your Honor, I think is important for this statute, because the structure of the statute, if you look to 7431, Section A creates a cause of action, imposes liability on the United States. Subsection C. But waiver immunity as to that. As to that. That's correct. It creates a cause of action. But you need to look to 7431C to look to the extent of the waiver, that is, what damages are permitted. And C1a is the provision that allows actual damages. That would be your traditional tort-type action where the defendant, the plaintiff has suffered actual damages. The waiver as to actual damages. As to actual damages. That's correct. No, C1b is actual damages. C1a is $1,000. Thank you for that correction. C1b is actual damages. The plaintiffs have conceded in this case there are no actual damages. C1a, the issue, the pointed issue in this case is this provision that weighs our liability to the extent of $1,000 for each act of disclosure. Now, we've argued and the district court found that that language was plain and that it was in our favor. But under the principle of sovereign immunity, we believe even if it were ambiguous, we would win under these principles, because this is a recovery that is not permitted at the common law. And so the issue for the Court would be to what extent has Congress having by grace created this remedy that is recovery, a windfall recovery for someone who can demonstrate and therefore has suffered no actual damages. What sort of recovery would be allowed? And the Congress has said $1,000 for each act. And as the Court has pointed out, that certainly can be read plainly. An act, an event, an occurrence can be read quite plainly to mean one incident no matter how many listeners. And that, in fact, is a majority rule. The courts that have looked at it, with the sole exception of Malice, that have addressed the issue, district courts in particular, have made that conclusion. But as I say, even if it were ambiguous, we believe the principles of sovereign immunity would mandate upholding the ruling of the district court. The purpose of the statutory scheme, quite simply, is to allow this nominal statutory recovery for a plaintiff who suffers no actual damages. And as this Court pointed out in Miller and as the Court has indicated through its questions, it would be an absurd result if anything else were to eventuate, because it would clearly be a windfall recovery. If you compare this situation to the situation in Miller, for example, in Miller some 181,000 listeners heard this detailed tax information. In this case, 100 people heard the fact that the plaintiffs were under criminal investigation. We respectfully submit that would be an absurd result if the Court would allow a greater recovery in the absence of actual damages. But more fundamentally, beyond the public policy reasons, Your Honor, is the fundamental issue that under the principle of sovereign immunity, we cannot expand that remedy beyond what Congress has clearly required. If there are no further questions on that issue, Your Honor, I'll proceed to the second issue, which is punitive damages. Once again, the background rule being the principle of sovereign immunity, in this case, it's quite clear, and the appellants once again have not rebutted our representation that the majority rule is that punitive damages are permitted only in the presence of actual damages. And Judge Trott, in a dissenting opinion, made that point, United States v. Hawkins in this Court. And that is, in fact, the majority rule. The district court made that point in a footnote in her opinion. And again, the appellants have not rebutted that here on appeal. Indeed, the Supreme Court ruled last year in State Farm v. Campbell that the ratio of punitive damages to actual damages is constitutionally mandated to be a reasonable ratio, and therefore we submit that's a reiteration of that general principle that punitive damages follow, flow from demonstration of actual damages. Now, that may push the argument a little too far. You're not suggesting that Congress could not provide punitive damages in the event of no actual, are you? No, Your Honor, that's correct. I'm suggesting Congress could do it, but so it's not a constitutional prohibition against Congress doing that. There's no constitutional prohibition against Congress doing it, Your Honor. Constitutional prohibition would be, well, let me rephrase that. We should presume that Congress intended the common law, the generally accepted definition. And so we don't think it's necessary to reach that issue in this case of whether Congress could do it. But quite simply, the Court should apply that general presumption that is firmly established in the law that Congress intends the commonly accepted meaning of terms of art that are used in Federal statutes. Your Honor, if I may, simply to address the issue, the pink elephant in the room, the question of United States v. Malice, the case that the plaintiffs rely upon. The district court found it not applicable. This Court distinguished it in Miller. We respectfully submit that the Fourth Circuit simply didn't deal with this issue of sovereign immunity, didn't acknowledge that there was any constraint on the application of the scheme. Well, the Fourth Circuit, in holding damages, more damages against the United States, it's well known that the Fourth Circuit is more liberal than the Ninth. I wouldn't comment on that, Your Honor. But as I say, in this respect, the Fourth Circuit failed, we think, to deal with that fundamental issue of sovereign immunity, which one might expect the Fourth Circuit to do. Although this is a case involving the IRS, that same general principle applies. The taxpayers, the innocent taxpayers, are the people who will be paying this claim. And that's the issue under the doctrine of sovereign immunity that requires the Court to construe the waiver strictly. And therefore, we respectfully submit that malice was wrongly decided. Now, this Court distinguished it in Miller. The district court in Ward distinguished it. And the distinction the Court drew in Ward was that in malice you had a distinct act. With regard to the envelopes that were addressed to taxpayers, the Court in Ward distinguished malice by pointing out that the agent at least had typed or written a second addressee on the envelope, some distinct physical act. And so there is an arguable factual distinction. But more importantly, we respectfully submit, Your Honor, that if the Court looks to the statutory scheme, looks to the background principles of statutory construction, the only correct result would be for the Court to avoid creating a potential absurd interpretation and to affirm the district court's ruling in this case. If there are no further questions. Thank you, Your Honor. Thank you very much. Would you like a minute? Thank you, Your Honor. Back to punitive damages. By accepting the government's argument that no matter how egregious the unauthorized disclosure is, if there are no actual damages by their definition, you're limited to the $1,000 statutory damages only. And certainly where the conduct is so egregious that it rises to the level of grossly negligent disclosures, there must be more available under the statute, and I think a proper interpretation of it is that the government is trying to read out of the statute the phrase, the sum up. When it's very egregious, the taxpayer has his choice whether he can have the punitive damages or accept the statutory damages. And even if the government is correct on the number six times one active disclosure, the acts were so egregious according to their admission that we should be able to address the issue of punitive damages. Thank you. Thank you. Thank both of you for your helpful arguments. The case of Siddiqui v. United States is now submitted for decision.
judges: Beezer, Alarcon,w. Fletcher